## THE TEXAS LAND AND LOAN CO. v. J. B. WATKINS.

### No. 1070.

**1.  Deed—Construction of Recitals Showing Vendor's Lien.**

Where a deed recites the entire consideration in a stated sum, part of it paid' in cash and part agreed to be paid by the grantee's assumption of a mortgage encumbrance upon a designated part of the land, it shows upon its face that the vendor's lien was thereby retained upon the entire tract, and not merely upon the tract covered by such encumbrance.

**2.  Verdict—Judgment not Warranted Unless Material Issues are Determined.**

In an action upon a note and for foreclosure of a lien, the defendant pleaded the general denial, and prayed that the amount of plaintiff's debt be ascertained. Held, that a verdict for plaintiff which failed to find the amount of the debt, or the existence of the lien, would not support a judgment for the debt and for foreclosure.

**3.  Charge of Court—Requested Instruction Necessary, When.**

A failure of the court to charge the jury upon a given issue is not fundamental' error, and will not be considered in the Appellate Court, unless the attention of the trial court was directed to the question by a requested instruction and the point is presented in a proper assignment of error.

APPEAL from Dallas.  Tried below before Hon. EDWARD GRAY.

*Willie, Campbell & Ballinger,* for appellant.

*W. S. Simkins* and *Gano & Gano,* for appellee.

LIGHTFOOT, CHIEF JUSTICE.—The statement of the case by appellant is adopted, as follows:

This is a suit brought by J. B. Watkins against the Texas Land and Loan Company, the Ellis County Land and Cattle Company, W. C. Gano and Clara B. Gano.  The cause of action alleged is, that on June 1, 1887, C. W. and John T. Gano, the latter being now deceased, and Clara B. Gano, being a widow and sued as survivor in the community, made, executed and delivered to one Ann King an instrument in writing known as a real estate and mortgage coupon bond, by the terms of which an indebtedness was acknowledged to Ann King of $10,000, payable five years after date, with interest at the rate of 6 per cent per annum, interest payable semi-annually.  That the interest was represented by ten coupon notes attached to said bond; that if not paid at maturity the coupons should draw interest at the rate of 12 per cent per annum from date, and 10 per cent as attorney's fees, if suit be instituted.  That said bond and interest coupons were secured by mortgage or trust deed upon 23,040 acres of land described in the petition.  That on the same date, C. W. Gano and John T. Gano executed and delivered a deed of trust or mortgage upon the same land to secure Watkins in the payment of ten notes, representing the difference between 6 per cent interest and 10 per cent interest per annum, the real rate at which the Ann King loan was made.  That plaintiff had become the purchaser and owner

for a valuable consideration of all of said coupons attached to the Ann King mortgage, and that he was entitled to all the securities incident to the same. (It is not deemed necessary to describe specifically the land mortgaged to secure these indebtednesses; it will be referred to hereafter as the 20,000 acres, and the balance of the land in suit as the 40,000 acres.)

The petition next alleged that, after the date of the execution of the bonds and coupons and deed of trust, that is to say, January 28, 1888, C. W. and John T. Gano, being the owners of the land (the 60,000 acres), sold and conveyed unto the Ellis County Land and Cattle Company the 23,000 acres and the 40,000 acres. That the consideration for said lands, paid and to be paid for the same, as stated in said deed, by the Ellis County Land and Cattle Company to said C. W. and John T. Gano, was "the sum of $122,000, paid as follows: $112,000 cash in hand, and $10,000 paid and agreed to be paid by the assumption of an incumbrance upon the lands herein conveyed in blocks G-4, G-5 and G-6 by the Ellis County Land and Cattle Company,"—the grantee in said deed. The lands in blocks G-4, G-5 and G-6 were the 23,040 acres specifically mortgaged by the Gano Brothers for the security of the Ann King and Watkins debts.

The petition next charged that by such assumption the Ellis County Land and Cattle Company agreed and promised to pay Ann King the above described bond and mortgage, as a part of the consideration of the 60,000 acres, and that the said bonds and coupons became thereby and are now a vendor's lien upon the same. Default and non-payment were next alleged.

The petition next alleged the death of John T. Gano, the qualification of Mrs. Clara B. Gano as survivor in community, and the failure and refusal of the surviving partner and the survivor in community to pay and discharge the Ann King and Watkins debt.

The petition next charged that the Texas Land and Loan Company was asserting some claim or title to the lands, or a portion thereof, hereinbefore described in the petition, and alleged that if said company had any right or title to the land it was subsequent to plaintiff's mortgage and subject to the vendor's lien.

The next allegation of the petition was that W. L. Williams, the plaintiff's attorney, was an attorney at law, and that the bond and mortgage had been placed in his hands for the collection of the debt and interest due thereon.

The petition prayed for citation, judgment against the Ellis County Land and Cattle Company and the Ganos, interest at the rate of 6 per cent on the bond and 12 per cent on the coupons, 10 per cent on the aggregate as attorney's fees, judgment against all the defendants foreclosing the vendor's lien upon the 61,040 acres of land, for an order of sale directing the sale of all land for the purpose of paying off the debt; and, in the alternative, that should the court hold that the plaintiff was not entitled to foreclosure of the vendor's lien upon the entire body of

land, and that the vendor's lien does not attach to the 40,000 acres, then for judgment for the debt, interest, attorney's fees, and foreclosure of the mortgage on the 20,000 acres.

The Texas Land and Loan Company answered; general and special demurrers were filed, all of which were overruled; and it pleaded that it was the owner in fee simple absolute, in possession and entitled to the possession, of the 40,000 acres. That on April 24, 1889, it had loaned the Ellis County Land and Cattle Company large sums of money, to secure which the latter company had executed a deed of trust on the 40,000 acres now claimed by the Texas Land and Loan Company. (The Ellis County Land and Cattle Company will be hereafter called the Ellis Company; and the Texas Land and Loan Company, the Texas Company; the other defendants will be termed the Ganos.) That the loan of the Ellis Company matured, default was made, suit brought, judgment taken, and foreclosure of these lands had, the lands duly sold, and the Texas Company became the purchaser thereof for the sum of $25,000. That the Ellis Company purchased the lands from the Ganos, and derived title thereto from the deed of conveyance containing full covenants of general warranty. That the mortgage assumed by the Ellis Company was specifically declared to be a lien only upon the lands in blocks G-4, G-5 and G-6. That said lands were no part or parcel of the land claimed by the Texas Company. That the lands conveyed to the Ellis Company, except the lands in blocks G-4, G-5 and G-6, were so conveyed by the Ganos free and clear of all liens. That a part of the consideration for said purchase by the Ellis Company was that no part of the lands except those in G-4, G-5 and G-6 should be incumbered or affected by the deeds of trust of the Ganos. That the purchase was for the sum of $2 per acre. That the purchase money, except $10,000, being the mortgage on the land in blocks G-4, G-5 and G-6, was paid. That the Ellis Company assumed the indebtedness, which was only an incumbrance upon the lands in blocks G-4, G-5 and G-6. That by the terms of the deeds of trust on these lands in favor of Watkins, they did not become and could not become a charge or lien on the other lands. That this was expressly understood by the parties to the transaction; that the purchase would not have been made had not this been thoroughly understood. That there was an agreement between the parties to the transaction as to the lands, except those in blocks G-4, G-5 and G-6, and that said agreement was a material and valuable consideration. Defendant then pleaded that if it be held that the deed from the Ganos to the Ellis Company carried a vendor's lien, then that this was the result of accident or mistake; and prayed that if the court should hold that the 40,000 acres were incumbered, the deed should be reformed and corrected to express the true intention; and the Texas Land and Loan Company denied every allegation of plaintiff's petition.

The Ganos answered by general demurrer, and denied generally all and singular the allegations of plaintiff's petition. The answer of the Ganos then alleged, in answer to plaintiff's petition and for cross-bill

against the Texas Land and Loan Company, practically as alleged in the original petition.

The cause was tried before a jury, and the following verdict was rendered: "We, the jury, find and believe from the evidence that the deed in question, as written, correctly expresses the contract and agreement between the parties thereto, and there was no accident or mistake of the parties thereto." Thereupon the court gave judgment for the plaintiffs, subjecting the whole 63,040 acres of land to sale to pay the debt claimed by Watkins, from which the Texas Land and Loan Company has appealed.

1.   The first assignment of error presented by appellant is, that the court erred in its charge to the jury that the deed from the Ganos to the Ellis County Land and Cattle Company, conveying all the lands in question, is in writing, and on its face shows a vendor's lien on all the lands conveyed.

The deed on its face expressed the consideration as follows: "One hundred and twenty-two thousand dollars, paid as follows, to-wit: one hundred and twelve thousand cash, receipt of which is hereby acknowledged, and ten thousand dollars paid and agreed to be paid by an assumption of an incumbrance upon the lands herein conveyed in blocks G-4, G-5 and G-6 by the Ellis County Land and Cattle Company (grantee herein), said incumbrance being an indebtedness of ten thousand dollars in favor of J. B. Watkins L. M. Company, same being evidenced by notes dated June 1, 1887, and due five years after date, and secured by deed of trust on said lands. (Deed of trust is also executed upon said property to secure a part of the interest upon said debt which is included in the amount assumed by grantee herein.)"

There can be no doubt that the face of this deed was properly construed by the court below to show a vendor's lien on all the land conveyed by it, and not merely on the tracts covered by the original mortgage. The vendor's lien springs up from the contract of purchase, unless waived by the parties themselves. In this case, the deed upon its face shows an agreement, as a part of the consideration for the purchase of the 60,000 acres, that the grantee would pay to the J. B. Watkins Company the debt which they held against the Ganos. The grantee took the whole tract, subject to this vendor's lien. Joiner v. Perkins, 59 Texas, 300, and authorities there cited; Slaughter v. Owens, 60 Texas, 668; Meyer v. Smith, 3 Texas Civ. App., 37.

2.   Appellant complains of the following charge of the court: "The deed as written is presumed to express the true agreement of the parties, and defendant, the Texas Land and Loan Company, must make out its case showing such waiver and such accident or mistake in said deed by a preponderance of the evidence."

Appellant insists that the effect of this charge was to lay down the rule that, in order for appellant to maintain its claim that the parties to the contract agreed at the time that the vendor's lien on the 40,000 acres tract should be waived and should exist only on the 23,000 acres

under the mortgage and that this was left out of the written contract by accident or mistake, they must affirmatively prove waiver, accident and mistake. We do not think the charge, taken as a whole, will bear this interpretation; but, inasmuch as the case must be reversed on another point, the charge can be so worded as to be free from any criticism.

3. The third assignment is that the verdict of the jury does not authorize the judgment. The verdict is: "We, the jury, find and believe from the evidence that the deed in question, as written, correctly expresses the contract and agreement between the parties thereto, and there was no accident or mistake of the parties thereto." The suit was on a note, and to foreclose a vendor's lien on the 60,000 acres of land. Defendant had plead the general issue, and in its special answer had expressly prayed that the amount of the plaintiff's debt be ascertained. The jury failed to find either the debt or the existence of the lien. The method adopted by the court below of submitting to the jury by special charge only the clearly controverted issues of fact is one to be commended, and if the practice could obtain the legislative sanction, it would save much expense and unnecessary delay in expediting a final determination of causes. But under our present practice, it can not be sustained by authority. The verdict should dispose of all the issues of fact made by the pleadings and evidence. Michon v. Ayalla, 84 Texas, 689; Hirsch v. Adams, 81 Texas, 95; May v. Taylor, 22 Texas, 349; McConkey v. Henderson, 24 Texas, 214; Preston v. Breedlove, 45 Texas, 50.

The appellee J. B. Watkins L. M. Company has filed no brief, and appellees Ganos have presented in their brief their side of the case, and have requested us to pass upon certain questions therein suggested, but they have presented no cross-assignments of error allowing us, legitimately, to consider the points discussed.

It has been repeatedly held by the Supreme Court that the failure of the court to charge the jury on a given issue is not fundamental error; and that such failure will not be considered in the Appellate Court, unless the attention of the trial court is directed to the question by a requested instruction, and the point presented in a proper assignment of error.

Because the verdict is not sufficient to support the judgment, it must be reversed and the cause remanded.

*Reversed and remanded.*